UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-20701-CV-HUCK/O'SULLIVAN

LOUIS PISANI,

    Plaintiff,

vs.

ASHLEY L. DIENER, MAURICE J. KUTNER &
ASSOCIATES, P.A., KATHERINE
FERNANDEZ RUNDLE, KENNETH KAPLAN,
JUDGE DEBORAH LABORA, in her capacity as
a Judge of the Eleventh Judicial Circuit in and for
Miami-Dade County, Florida, HARVEY
ROGERS, and MICHAEL GALE,

    Defendants.
_____/



CLOSED CIVIL CASE

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

This matter came before the Court on the Defendants'[1] motions to dismiss the Plaintiff's *pro se* Second Amended Complaint (D.E. #53). This Court has reviewed the motions, the record, and is otherwise duly advised in the premises. The Court determines that the Plaintiff's claims are barred by principles of judicial and prosecutorial immunity, the state-actor requirement in § 1983 actions, the applicable statutes of limitation, and other applicable legal principles. Accordingly, this Court grants the motions to dismiss. Further, the Court dismisses the second amended complaint with prejudice because the Plaintiff has already amended his original complaint twice and the defects with the second amended complaint cannot be cured through further amendment.

---

[1]     The defendants are attorneys and public officials who were involved in state court proceedings in which the Plaintiff was a party. The following defendants were the Plaintiff's attorneys in the state court proceedings: Ashley Diener, Kenneth Kaplan, and Michael Gale. These defendants represented the Plaintiff's ex-wife in the state court proceedings: Maurice J. Kutner & Associates, P.A. and Harvey Rogers. Katherine Fernandez-Rundle is the State Attorney of the Eleventh Judicial Circuit and, in that capacity, is responsible for the prosecution of crimes in the courts of the Eleventh Judicial Circuit. *See* Fla. Stat. § 27.02(1). Judge Deborah Labora was the Florida judge who presided over the Plaintiff's case.

## I. Factual and Procedural Background

### A. The New York Proceedings

This case began in December 2007 when the Plaintiff filed a complaint against Defendants Diener and Fernandez-Rundle in the U.S. District Court for the Eastern District of New York seeking recovery of costs and damages exceeding $500,000 against each defendant. The complaint alleged that the Plaintiff's then-wife moved to Miami with their two children and eventually discontinued contact with the Plaintiff. According to the complaint, the Plaintiff retained Defendant Diener to represent him in a domestic violence case in Miami-Dade County. The Plaintiff claims that he was "devastated" when Defendant Diener agreed to the Miami-Dade court's entry of a temporary injunction. After the entry of the injunction, the Plaintiff traveled to the Miami-Dade courthouse to attend a hearing. At the conclusion of the hearing, Plaintiff was arrested and charged with aggravated stalking and four counts of telephone contact in violation of the injunction. Ultimately, the Plaintiff's aggravated stalking charge was reduced to simple stalking and the Plaintiff was sentenced to five years of probation.

In February 2008, the Plaintiff filed an amended complaint in which he incorporated the allegations contained in the original complaint and added several other parties. In the amended complaint, the Plaintiff claims that Defendant Diener breached his fiduciary duty to the Plaintiff when he agreed to the temporary injunction. The Plaintiff also sues his wife's counsel, Defendant Kutner, because Defendant Kutner contributed to Judge Labora's judicial election campaign and, in the course of representing his wife, made "defamatory and untruthful remarks and inaccuracies against Plaintiff [and his] children." Defendant Gale, another attorney for the Plaintiff, allegedly negligently represented him in an evidentiary hearing relating to the Plaintiff's February 2001 arrest. Furthermore, State Attorney Fernandez-Rundle committed a "travesty of justice" and misused the aggravated stalking statute when her office charged the Plaintiff with that offense.

The Plaintiff also alleges that Defendant Kaplan negligently advised him that he had permission to see his children because, when the Plaintiff attempted to visit his children, he was arrested. The Plaintiff claims that during the state court proceedings, Judge Labora acted "maliciously" when she issued one or more orders without making findings of fact. Allegedly, Judge Labora discriminated against the Plaintiff when she refused to vacate an injunction based on the Plaintiff's mistreatment of a day care worker who spoke only Spanish. The Plaintiff claims that this

2

is national origin and gender discrimination because he does not speak Spanish. Finally, the Plaintiff alleges that Defendant Rogers contributed to Judge Labora's judicial election campaign, accused the Plaintiff of making disparaging remarks about Cubans, communicated ex parte with Judge Labora, and committed "other Florida Bar irregularities."

In his prayer for relief, the Plaintiff requests (1) an injunction commanding Judge Labora to vacate the injunction she issued and order the Plaintiff's ex-wife to inform the Plaintiff of his children's condition, (2) a declaration that the Plaintiff is not required to speak Spanish and is entitled to a political opinion, and (3) $1,000,000 in damages and litigation costs.

The amended complaint attached undated letters from the Plaintiff to several defendants. In his letter to Defendant Diener, the Plaintiff stated that Defendant Diener had violated his fiduciary duty to the Plaintiff, been negligent and incompetent, taken the Plaintiff's money under false pretenses, committed deceptive practices by falsely holding himself out as dedicated to the Plaintiff's cause, and humiliated the Plaintiff by agreeing to a temporary injunction. In his letter to Defendant Kutner, the Plaintiff alleged that Defendant Kutner had "committed acts that are unlawful or contrary to honesty and justice" and "presented to the tribunal inaccuracies, including not [sic] knowingly presenting false evidence and disclosing certain evidence and discussing certain material facts which were not true." To Defendant Gale, the Plaintiff wrote that Defendant Gale had violated his fiduciary duty, been negligent and incompetent, taken the Plaintiff's money under false pretenses, committed deceptive practices by falsely holding himself out as dedicated to the Plaintiff's cause, and humiliated the Plaintiff by withdrawing from representing the Plaintiff in April, 2001. In his letter to Defendant Kaplan, the Plaintiff wrote that Defendant Kaplan had violated his fiduciary duty to the Plaintiff, been negligent and incompetent, committed deceptive practices by falsely holding himself out as dedicated to the Plaintiff's cause, and caused embarrassment to the Plaintiff when the Plaintiff was arrested in court on December 20, 2002. Finally, in his letter to Defendant Rogers, the Plaintiff alleged that Defendant Rogers had committed professional malpractice, defamed the Plaintiff, discriminated against the Plaintiff based on national origin and gender, and misappropriated money from the sale of his house.

The defendants moved to dismiss the amended complaint on several grounds. In March 2009, the New York federal district court determined that it lacked personal jurisdiction over the defendants and that venue was improper in the Eastern District of New York. Instead of dismissing

the case, that court transferred the case to the U.S. District Court for the Southern District of Florida. *Pisani v. Diener*, No. 07-CV-5118 (JFB) (ARL), 2009 WL 749893, at *10 (E.D.N.Y. Mar. 17, 2009).

### B. The Florida Proceedings

Upon receiving the case, this Court ordered the Plaintiff to meaningfully respond to the defendants' motions to dismiss and file a document succinctly stating the bases for his claims against the defendants. (D.E. ##42 and 48.) After reviewing the Plaintiff's responses (D.E. ##50 and 51) to those orders, this Court determined that the responses did not help the Court to understand the substance, nature, or basis of the Plaintiff's claims and the Court ordered that the Plaintiff file an amended complaint. (D.E. #52.)

On June 15, 2009, the Plaintiff filed his second amended complaint. In that complaint, the Plaintiff alleges that "by reason of national origin and gender, [he] was denied the opportunity to: (i) defend his rights; and (ii) to be heard in opposition," and that discrimination resulted in the denial of an "opportunity to exercise his constitutional rights as a father." The complaint also alleges that his legal counsel was negligent, which negligence resulted in the Plaintiff being unable to "defend his rights," "be heard in opposition," and "be a father." As a result, the Plaintiff claims that he and his children suffered psychological injuries.

#### 1. Judge Labora

The Plaintiff alleges that Judge Labora engaged in gender and national origin discrimination and deprived him of his constitutional rights to custody of his child and "to control the upbringing of children, as protected by the substantive due process clause of the U.S. Constitution." Judge Labora allegedly committed these torts when, as she was acting in her official capacity as a judge, she made her decisions based solely on "the words of Plaintiff's former wife (Cuban in origin and female) and of [Defendant Rogers], attorney for Plaintiff's former wife, who also contributed to the election campaign of [Judge Labora]." The Plaintiff claims that he suffered "severe injuries" when Judge Labora granted a permanent injunction and purportedly "allowed [the defendants] to make comments against the Plaintiff's [national] origin, without taking any measure against them."

#### 2. State Attorney Fernandez-Rundle

The Plaintiff alleges that State Attorney Fernandez-Rundle "contributed to the issuance of the permanent injunction by prosecuting [the] Plaintiff for domestic violence without any evidence

4

of wrongdoing." The Plaintiff claims that the "entire criminal prosecution" was superficially examined, arbitrary, and the prosecution did not meet its burden of proof. Accordingly, State Attorney Fernandez-Rundle violated the Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment, causing the Plaintiff to suffer "severe injuries."

### 3. Defendant Kutner

The Plaintiff alleges that Defendant Kutner, one of the Plaintiff's ex-wife's attorneys, contributed to Judge Labora's judicial election campaign without disclosing those contributions. Accordingly, the Plaintiff asserts, Defendant Kutner, "acting in concert with [Judge Labora], violated [the Plaintiff's] constitutional rights to due process and to: (i) custody of one child; and (ii) right to control upbringing of children," causing the Plaintiff to suffer "severe injuries."

### 4. Defendants Rogers and Kaplan

The Plaintiff alleges that these defendants contributed to Judge Labora's judicial election campaign and acted in concert with a general magistrate to force the Plaintiff to sell "the house located in Garden City, New York, at no consideration." The Plaintiff further alleges that Defendant Rogers is in unlawful possession of funds that belong to the Plaintiff after the sale of the Garden City property. These Defendants allegedly threatened the Plaintiff with judicial action and, acting in concert with all other defendants, violated the Plaintiff's right to "due process and to: (i) custody of one child; and (ii) right to control upbringing of children," and caused the Plaintiff to suffer "severe injuries."

### 5. Defendant Gale

The Plaintiff alleges that Defendant Gale withdrew as the Plaintiff's counsel "without sufficient notice and while fundamental judicial/court/evidentiary activities were in progress . . . causing [the] Plaintiff enormous damages." The Plaintiff alleges that Judge Labora granted Defendant Gale's request to withdraw and, therefore, while acting in concert with all other defendants, Defendant Gale violated the Plaintiff's "constitutional rights to due process and to: (i) custody of one child; and (ii) right to control upbringing of children," causing the Plaintiff to suffer "severe injuries."

### 6. Defendant Diener

The Plaintiff again alleges that Defendant Diener agreed to the entry of a temporary order of protection without the Plaintiff's authorization. Defendant Diener also withdrew as the Plaintiff's

counsel "without sufficient notice, notwithstanding that important judicial activities were in progress." The Plaintiff alleges that Judge Labora granted Defendant Diener's request to withdraw and, therefore, while acting in concert with all other defendants, Defendant Diener violated the Plaintiff's "constitutional rights to due process and to: (i) custody of one child; and (ii) right to control upbringing of children," causing the Plaintiff to suffer "severe injuries."

The Plaintiff concludes by stating that all Plaintiffs were negligent in contributing to the issuance of the permanent injunction against him. Notably, the second amended complaint did not include the letters that the Plaintiff had attached to the amended complaint.

All seven defendants moved to dismiss the second amended complaint.

**II.   Analysis**

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." But to survive a motion to dismiss, the complaint must set forth sufficient factual matter to state a claim that is facially plausible, and a claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Moreover, where the allegations in the complaint do not allow the court to "infer more than the mere possibility of misconduct," the plaintiff has not shown that he is entitled to relief. *Id.* Finally, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations in the plaintiff's complaint, there is a dispositive legal issue that precludes relief. *See, e.g., Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Applying the *Iqbal* standard to the Plaintiff's second amended complaint (and the letters attached to the amended complaint), it is apparent that the Plaintiff has not stated—and will not be able to state—a plausible claim for relief. The Plaintiff's grievances are grounded in his disappointment with the results of various state court proceedings and his strategy for dealing with this disappointment is transparent: the Plaintiff has taken a legally insufficient litigation approach,

suing everyone that had anything to do with his losses in state court. Logic, experience, common sense, and established legal principles defeat the Plaintiff's strategy.

### A.     Subject-Matter Jurisdiction

This Court has jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332 because the Plaintiff asserts a claim under 42 U.S.C. § 1983 and seeks redress, including damages exceeding $75,000, for various state law torts against diverse defendants.

### B.     The Plaintiff's § 1983 Claim

Section 1983 creates a right of action in favor of all persons who are subjected to "the deprivation of any rights, privileges, or immunities secured by the Constitution and law" by state actors acting under color of state law. 42 U.S.C. § 1983. Accordingly, to state a claim under § 1983, a plaintiff must allege that the conduct forming the basis of the complaint (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156-57 (1978). Because this Court determines that the Plaintiff is unable to satisfy the first element of a § 1983 action, it does not consider whether the actions that the Plaintiff complains of deprived him of any rights, privileges, or immunities secured by the Constitution or federal laws.

#### 1.     Private-Party Defendants

Private parties are rarely state actors for the purpose of § 1983 claims. A plaintiff can support a § 1983 claim if he is able to show that a private party jointly acted with a state official to deprive the plaintiff of his constitutional rights. *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 927 (1982). The private party's conduct must be fairly attributable to the state. *Id.* at 937. And, to establish a prima facie case of a § 1983 conspiracy, the plaintiff must show evidence that the private-party defendants reached an understanding with the state officials to violate his constitutional rights. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002). To determine whether the actions of a private party are attributable to the state, the Eleventh Circuit applies a three-part test to the private actor's conduct: (1) the public function test, (2) the state compulsion test, and (3) the nexus/joint action test. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003). As articulated in *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 834, 840 (11th Cir. 1993),

[t]he public function test limits state action to instances where private actors are

7

performing functions traditionally the exclusive prerogative of the state. The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." (internal citations omitted).

If a plaintiff seeks to transform a private actor into a state actor using a joint activity or conspiracy theory, the plaintiff must "plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) citing *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

The private-party defendants were not performing a function that is traditionally the exclusive prerogative of the state when they committed the acts about which the Plaintiff complains. As noted above, the private-party defendants are attorneys who represented the Plaintiff or his ex-wife. Attorneys engaged to represent private parties in domestic relations matters are not performing functions that are traditionally the exclusive prerogative of the state. Very few functions have been "exclusively reserved to the State," and lawyering for private parties is certainly not an example of such a function. *See Flagg Bros.*, 436 U.S. at 158-60. Further, the mere fact that attorneys are licensed by the state is insufficient to transform them into state actors. *Harvey*, 949 F.2d at 1132.

The Plaintiff also has not established state action under the state compulsion test because the Plaintiff does not allege that the private-party defendants' acts were either coerced or significantly encouraged by the government.

Finally, the Plaintiff is not able to show that the private-party defendants conspired with state actors such that the private-party defendants' acts were tantamount to state action. As the *Fullman* court noted, conspiracy (particularly in civil rights actions) must be pled with sufficient detail to inform the defendant of the nature of the conspiracy that is alleged. The Plaintiff has not met this standard. The extent of the Plaintiff's allegations with respect to most of the private-party defendants is that they contributed money to Judge Labora's election campaigns. The private-party defendants have a constitutional and statutory right to contribute to judicial campaigns,[2] and the

---

[2]     The U.S. Supreme Court recently confronted the question of judicial campaign contributions in *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S.Ct. 2252 (2009). In that case, the Court held that "[n]ot every campaign contribution by a litigant or attorney creates a probability of bias that requires

8

Plaintiff has not alleged that the private-party defendants made the campaign contributions in question for an illicit purpose or in furtherance of a conspiracy to deprive the Plaintiff of his constitutional rights. The Plaintiff also has not pled the requisite details regarding a purported conspiracy to sell a home in Garden City, New York. Finally, the Plaintiff has not sufficiently pled if and how his attorneys' decisions to withdraw from representing him were part of a conspiracy with state actors to deprive him of his constitutional rights.

Accordingly, the Plaintiff has not shown under any of the tests articulated in *Willis* that the private-party defendants were state actors. As such, this Court must dismiss the § 1983 claims against each of these defendants.

### 3. State Actors

Unlike the other defendants, Judge Labora and State Attorney Fernandez-Rundle are state actors. Nevertheless, the Plaintiff's claims against Judge Labora and State Attorney Fernandez-Rundle fail for several other reasons.

First, Judge Labora and State Attorney Fernandez-Rundle, sued in their official capacity, are not "persons" for § 1983 purposes. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Harris v. Bush*, 106 F.Supp.2d 1271, 1276 (N.D. Fla. 2000).

Second, Judge Labora and State Attorney Fernandez-Rundle are entitled to immunity for acts undertaken while discharging their official duties. Judge Labora is entitled to judicial immunity because the Plaintiff's claims against Judge Labora are grounded in the Plaintiff's dissatisfaction with the decisions Judge Labora made while handling his case. "Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting In their judicial capacity unless they acted in the 'clear absence of all jurisdiction'" and "[t]his immunity applies even when

---

a judge's recusal" and determined that the non-donor's right to due process was only imperiled in "exceptional" circumstances where the donor "had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent." *Id.* at 2263-64. The Plaintiff has not alleged that the private-party defendants had this kind of an impact on Judge Labora's election, and unless the private-party defendants and Judge Labora seriously breached Florida's campaign finance laws, their contributions to Judge Labora's campaign likely pale in comparison to the $3 million contribution at issue in *Caperton*. *See generally* Fla. Stat. § 106.08 (limiting campaign contributions to $500 per person per election and setting criminal penalties for violations of the contribution limits).

the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000); *Weaver v. Geiger*, 294 F. App'x 529, 534 (11th Cir. 2008). The acts in question were in furtherance of Judge Labora's performance of her normal judicial functions, and the Plaintiff has not offered facts or law showing that Judge Labora was acting outside of the scope of her office when dealing with him. The Plaintiff's allegations that Judge Labora "made and based her decisions . . . without any evidence," granted the permanent injunction in question, and permitted certain commentary about the Plaintiff's origin, are insufficient to circumvent the judicial immunity accorded to Judge Labora. Accordingly, Judge Labora is entitled to absolute judicial immunity.

Under similar principles, State Attorney Fernandez-Rundle is entitled to absolute prosecutorial immunity. Prosecutors are immune from civil suits for damages under § 1983 for their acts in connection with initiating a prosecution and presenting the government's case to the court unless they are acting outside the scope and territorial jurisdiction of their office. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004); *Elder v. Athens-Clarke County, Ga.*, 54 F.3d 694, 695 (11th Cir. 1995). The Plaintiff's claim against State Attorney-Fernandez Rundle is that she "contributed to the issuance of the permanent injunction by prosecuting [the] Plaintiff for domestic violence without any evidence of the wrongdoing," that "the entire criminal prosecution . . . was arbitrarily and superficially examined," and that the state did not meet its burden of proof. These allegations do not overcome the immunity accorded to prosecutors. Accordingly, State Attorney Fernandez-Rundle is entitled to absolute prosecutorial immunity.

In sum, because Judge Labora and State Attorney Fernandez-Rundle are entitled to judicial and prosecutorial immunity, respectively, this Court must dismiss the Plaintiff's § 1983 claims against each of them.

### C. The Plaintiff's Common Law Claims

In addition to his § 1983 claims, the Plaintiff asserts several other claims against the private-party defendants. Although the Plaintiff raised some of these claims in the body of his second amended complaint, these claims were largely raised in letters sent to the private-party defendants and later attached to the amended complaint. While "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes" under Rule 10 of the Federal Rules of Civil Procedure, when a plaintiff amends a complaint the "amended pleading supersedes the

former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary" unless the amended pleading "specifically refers to or adopts the earlier pleading." *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007); *Varnes v. Local 91, Glass Bottle Blowers Ass'n. of the U.S. and Canada*, 674 F.3d 1365, 1370 n.6 (11th Cir. 1982) (citations omitted).

Accordingly, when the Plaintiff filed his second amended complaint without attaching the letters that he had attached to the amended complaint, he essentially abandoned the claims that he had raised exclusively through those letters. Nevertheless, this Court considers the claims that the Plaintiff raised in the letters because the inquiry is relevant to the analysis set forth in Section D of this Order regarding the futility of allowing the Plaintiff to amend his complaint. Because the Plaintiff is unrepresented, the Court liberally construes the second amended complaint and the letters attached to the amended complaint to ascertain the Plaintiff's claims. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se filings are held to "less stringent standards than formal pleadings drafted by lawyers"); *Harris v. Ostrout*, 65 F.3d 912, 915 (11th Cir. 1995) (pro se pleadings are construed "more liberally" than those of represented parties).

### 1. Defendant Diener

Defendant Diener represented the Plaintiff in proceedings pending in Miami-Dade County. Liberally construing the Plaintiff's allegations, the Court is able to discern two common law claims against Defendant Diener: (1) legal malpractice and (2) fraud.

Both of these claims, on the face of the second amended complaint, are barred by the applicable statutes of limitation. Defendant Diener's alleged legal malpractice occurred in 2000, but the Plaintiff waited until 2007 to commence this action. Under Florida law, a two-year statute of limitations applies to claims of professional malpractice. Fla. Stat. § 95.11(4)(a). A four-year statute of limitations applies to fraud claims. Fla. Stat. § 95.11(3)(j). Accordingly, because the Plaintiff waited until 2007 to bring his fraud claim against Defendant Diener, his claim is barred by the statute of limitations.

### 2. Defendant Kutner

Defendant Kutner represented the Plaintiff's ex-wife in the divorce and domestic violence action against the Plaintiff. The second amended complaint only purports to assert a § 1983 claim against Defendant Kutner, but a liberal reading of the Plaintiff's letter to Defendant Kutner suggests

a defamation claim. This claim fails because statements made during the court of judicial proceedings are not actionable under Florida's litigation privilege. *Levin v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 607-8 (Fla. 1994). And, in any event, to the extent Defendant Kutner made the statements in question at or around the time of the state court proceedings, they are barred by the two-year limitation period applicable to defamation claims. Fla. Stat. § 95.11(4)(g).

### 3. Defendant Rogers

Defendant Rogers represented the Plaintiff's ex-wife in her divorce from the Plaintiff. Liberally construing the allegations in the second amended complaint and taking into consideration the claims raised in the attachments to the amended complaint, the Plaintiff alleges that Defendant Rogers is liable to him for (1) defamation, (2) fraud or conversion, and (3) national origin or gender discrimination.

As with Defendant Kutner, the defamation claim against Defendant Rogers is barred by the litigation privilege and/or the applicable statute of limitations.

The Plaintiff's fraud or conversion claims against Defendant Rogers are also barred by the statute of limitations because the acts giving rise to these causes of action occurred in 2001 and the Plaintiff waited until 2007 to bring suit against Defendant Rogers for fraud or conversion. *See* Fla. Stat. § 95.11(3) (providing for a four-year limitation period for "[a] legal or equitable action founded on fraud," or "an action to recover specific personal property.").

Finally, the Plaintiff's national origin or gender discrimination claim is inadequately presented and unmeritorious. Defendant Rogers is a private actor and not the Plaintiff's employer. In short, the Court is unable to discern any basis for a national origin or gender discrimination claim against Defendant Rogers.

### 4. Defendant Kaplan

Defendant Kaplan is the Plaintiff's former attorney. Once again, applying a liberal construction to the Plaintiff's complaint and the attachments to the amended complaint, this Court is able to discern a claim for (1) legal malpractice and (2) fraud or conversion against Defendant Kaplan.

The Plaintiff's legal malpractice claim against Defendant Kaplan is barred by the statute of limitations. Although this claim is not adequately stated in the second amended complaint, the details set forth in the letter attached to the amended complaint indicate that Defendant Kaplan's

alleged malpractice occurred on or around December 20, 2002, when authorities arrested the Plaintiff after the Plaintiff allegedly acted on Defendant Kaplan's faulty legal advice. Because a two-year statute of limitations applies to professional malpractice claims, and the Plaintiff waited until 2007 to bring this action, the Plaintiff's legal malpractice claim against Defendant Kaplan is time-barred.

The Plaintiff's fraud or conversion claims against Defendant Kaplan are barred by the applicable statute of limitations because the acts giving rise to these causes of action occurred in 2001, and the Plaintiff waited until 2007 to bring suit against Defendant Kaplan for fraud or conversion. *See* Fla. Stat. § 95.11(3).

### 5. Defendant Gale

Defendant Gale represented the Plaintiff in his divorce and in the proceedings relating to the Plaintiff's violation of the injunction. Liberally construing the second amended complaint and the attachments to the amended complaint, the Plaintiff appears to assert a claim for (1) legal malpractice and (2) fraud against Defendant Gale.

Both claims are barred by the applicable statutes of limitation. The alleged malpractice occurred in 2001, and the Plaintiff waited until 2007 to bring this action. Accordingly, the malpractice claim is barred by Florida's two-year statute of limitations. Fla. Stat. § 95.11(4)(a). The fraud claim is also barred by the statute of limitations because the Plaintiff waited six years to bring the claim which is subject to a four-year limitation period. Fla. Stat. 95.11(3).

### D.    Dismissal with Prejudice

As a general rule, a court should freely grant leave to amend a defective pleading. Fed. R. Civ. P. 15(a)(2). A court, however, may deny a plaintiff the opportunity to amend a defective pleading where such amendment would be futile because the amended pleading would still be subject to dismissal. *Sibley v. Lando*, 437 F.3d 1067, 1073-74 (11th Cir. 2005) (holding that a trial court's denial of a motion for leave to amend a complaint was not erroneous because amendment would be futile where the claims against the defendants were barred by judicial immunity); *Brewer Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1285-86 (11th Cir. 2000) (holding that a trial court correctly denied a motion for leave to amend a complaint because amendment would be futile where the applicable statute of limitation had run).

As set forth above, the Plaintiff's claims against Judge Labora and State Attorney Fernandez-Rundle are barred by judicial and prosecutorial immunity, respectively. Accordingly, under *Sibley*,

13

this Court's dismissal of the Plaintiff's § 1983 claims against Judge Labora and State Attorney Fernandez-Rundle is with prejudice because the Plaintiff could not amend the complaint in a manner that would avoid those defendants' immunities.

Similarly, the Plaintiff's § 1983 claims against the private-party defendants are subject to dismissal with prejudice because the Plaintiff could not amend his complaint in a manner that would satisfy the state actor requirement. The Plaintiff has had opportunities to amend his complaint and otherwise explain his claims to the Court, and the Court is comfortable that these opportunities sufficiently allowed the Plaintiff to set forth the level of factual support for his conspiracy claims required by Fed. R. Civ. P. 8(a), *Iqbal*, and *Harvey*.

Finally, the Court dismisses with prejudice the Plaintiff's common law claims against the private-party defendants. It would be futile to grant the Plaintiff another opportunity to amend his complaint because the Plaintiff's claims are barred either by the applicable statute of limitations or they cannot be amended to circumvent the immunities or similar legal principles that defeat them.

### III. Conclusion

For all of the foregoing reasons, the Plaintiff's second amended complaint is dismissed with prejudice. This case is closed, and all pending motions are denied as moot.

DONE and ORDERED in Chambers, Miami, Florida, September 17, 2009.

Paul C. Huck
United States District Judge

Copies furnished to:
Louis Pisani
All counsel of record